UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

* * * * * * * * * * * * * * * * *

XU-SHEN ZHOU, a/k/a JASON ZHOU,

                Plaintiff,

-vs-

STATE UNIVERSITY OF NEW YORK INSTITUTE
OF TECHNOLOGY, DRS. LISA BERNARDINO,
STEPHEN HAVLOVIC, WILLIAM LANGDON AND
PETER SPINA, personally and in their
official capacities,

                Defendants.

* * * * * * * * * * * * * * * * *

Examination Before Trial of

STEPHEN J. HAVLOVIC, Ph.D., held at

State University of New York

Institute of Technology, Utica,

New York, on May 11, 2010 before

NORA B. LAMICA, Court Reporter and

Notary Public in and for the State of

New York



Examination of Stephen Havlovic, Ph.D.                    2

APPEARANCES:

For the Plaintiff:

  XU-SHEN ZHOU a/k/a JASON ZHOU, PRO SE
  304 Richardson Avenue
  Utica, New York   13502


For the Defendant:

  STATE OF NEW YORK
  OFFICE OF THE ATTORNEY GENERAL
  ANDREW M. CUOMO
  The Capitol
  Albany, New York   12224-0341
  BY:  DOUGLAS J. GOGLIA, ESQ.
       Assistant Attorney General - Litigation Bureau


ALSO PRESENT:

  Anthony F. Panebianco
  Associate Vice President for Human Resources
  SUNY Institute of Technology
  P.O. Box 3050
  Utica, New York   13504-3050

# INDEX

## EXAMINATION

STEPHEN J. HAVLOVIC, Ph.D.                    Page

    Examination by Mr. Zhou                23

## EXHIBITS

| No. | Description | Page |
|---|---|---|
| 1 | Notice of deposition | 9 |
| 2 | E-mail to Xu-Shen Zhou from Stephen Havlovic dated 7/3/2007 | 42 |
| 3 | E-mail to Stephen Havlovic from Xu-Shen Zhou dated 7/24/2007 | 52 |
| 4 | E-mail to Anthony Panebianco from Stephen Havlovic dated 11/27/2007 | 113 |
| 5 | Letter to members of college-wide personnel committee dated 11/16/2007, two pages | 123 |
| 6 | Memo to Dr. Rosemary Mullick from Stephen Havlovic dated 11/15/2006 regarding renewal recommendation for Dr. Maureen Smith-Gaffney | 149 |

| | | |
|---|---|---|
| 7 | IDEA evaluation, course 0386, fall 2005/2006 | 174 |
| 8 | IDEA evaluation, course 0385, fall 2005/2006 | 174 |
| 9 | IDEA evaluation, course 0386, spring 2005/2006 | 175 |
| 10 | IDEA evaluation, course 0385, spring 2005/2006 | 175 |
| 11 | Online evaluation summary, spring 2007, ACC201, two pages | 189 |
| 12 | Memo to Dr. Rosemary Mullick from Stephen Havlovic dated 11/15/2006 regarding renewal recommendation for Dr. Jason Zhou | 208 |
| 13 | Statistics for graduate course | 222 |
| 14 | IDEA survey, Finance 0302, fall 2005/2006 | 227 |
| 15 | Academic portfolio summary, Jason Zhou | 230 |
| 16 | Memo, M. Pittarelli to Rosemary Mullick dated 11/21/2006 regarding personnel action | 267 |
| 17 | Memo to college-wide personnel committee from School of Business peer review committee dated 11/15/2006 regarding continuing appointment for Jason Zhou | 273 |
| 18 | Memo to fwll@sunyit.edu from Stephen Havlovic dated 3/1/2006 regarding finance class, two pages | 283 |

```
 1              Examination of Stephen Havlovic, Ph.D.              5
 2
 3
 4
 5              IT IS HEREBY STIPULATED by and between
 6         counsel for the respective parties that this
 7         Deposition is to be held pursuant to the
 8         provisions of the Civil Practice Law and
 9         Rules; that the presence of a Referee is
10         waived; that the signing of the minutes is NOT
11         waived; the filing of the transcript is
12         waived; that the witness may be sworn by
13         NORA B. LAMICA, Notary Public in and for the
14         State of New York; and that all objections,
15         except those as to form, are reserved until
16         the time of the trial.
17
18              *              *              *
19
20
21
22
23
24
25
```

```
1                Examination of Stephen Havlovic, Ph.D.        101
2              idea what you're asking.
3         A.    I received verbal comments, and I had received
4    written comments, and I was concerned about quantitative
5    evaluations.  I had concerns about your teaching.
6         Q.    Now, when was the time, the first time, you
7    decided to give me reassignment, to remove me from
8    teaching?
9                    MR. GOGLIA:  Objection.  Vague and
10              ambiguous.  Are you talking about --
11        Q.    Have you had any thoughts to remove me from
12   teaching to give me reassignment?
13        A.    That was in your final semester.
14        Q.    So there's no time before that final semester
15   that you had any thoughts to remove me from teaching; is
16   that correct?
17                   MR. GOGLIA:  Objection.  Assumes facts in
18              dispute in this action, and you're
19              mischaracterizing the witness's prior
20              testimony.  He didn't say that.  He talked
21              about --
22                   MR. ZHOU:  That's what I'm asking for, to
23              be clear.  Okay?  That's why I'm asking
24              question again.
25                   MR. GOGLIA:  Let's see what your -- what
```

```
1              Examination of Stephen Havlovic, Ph.D.        102
2              is your question, then, because your question
3              was insinuating --
4                   MR. ZHOU:  Stop this.  Don't waste the
5              time.
6                   MR. GOGLIA:  -- nothing happened until
7              the final semester, that that thought never
8              crossed his mind until the final semester.
9              And frankly, I don't know if that's true or
10             not.
11                  MR. ZHOU:  You give the speaking
12             objection, okay, multiple times now.  Give me
13             the answer.
14        A.   Can you repeat the question, because I'm not
15   sure what the question is, at this point?
16        Q.   You never had any thoughts to remove me from
17   teaching until the last semester; is that correct?
18        A.   I never considered removing you as an
19   instructor from the classroom during a semester, until
20   your final semester here at SUNY-IT.
21        Q.   Okay.  So the only thoughts you had to give me
22   reassignment occurred in the last semester?
23        A.   Correct.
24        Q.   What do you think the factors that contribute
25   to my decision to file this lawsuit?
```

```
 1              Examination of Stephen Havlovic, Ph.D.         180
 2      Q.   Exactly.  You looked at not three semesters,
 3 just two semesters evaluation forms?
 4      A.   She was in her third semester, I believe.
 5      Q.   Third semester, but didn't get third semester
 6 evaluation yet?
 7      A.   I didn't have evaluations yet, Dr. Zhou, but
 8 people come and complained.  I had three semesters.  I
 9 was in the third semester.
10      Q.   Okay.
11      A.   Please don't put words in my mouth.
12      Q.   No, I'm talking about this IDEA form.
13      A.   You might think that, but unless you
14 specifically tell me that and you pulled up the record,
15 that was in her third semester.
16      Q.   Okay.  Now, when you look at this, Exhibit 7,
17 in your evaluation, did you consider her years of
18 teaching experience?
19      A.   I was concerned about her teaching here.
20      Q.   So you never considered about how many years?
21      A.   That was a decision at the point of hire.
22 When somebody's hired, they see how they teach here and
23 the development they're doing here.
24      Q.   Just regarding whether she taught before?
25      A.   Doesn't matter.  They're not SUNY-IT students.
```

```
1              Examination of Stephen Havlovic, Ph.D.      181
2    That was someplace else.
3         Q.    Okay.  So when you evaluate teaching
4    performance, you disregard professors at prior
5    teaching --
6         A.    I didn't say I disregarded anything.  I said I
7    look at their current teaching that was done here.
8         Q.    So you -- yeah.  My question is, did you
9    disregard?
10        A.    I did not disregard anything.  I looked at the
11   teaching she had done here.
12              MR. GOGLIA:  Mr. Zhou, you got your
13        answer.  Anything more -- I mean, you can't
14        keep on asking your questions because you
15        don't like the answer you get.  You got your
16        answer.  Anything further is asked and
17        answered, and it's improper.  So move on.  You
18        got your answer.  Now it's --
19              MR. ZHOU:  I need an answer.  I need an
20        answer.
21              MR. GOGLIA:  He gave you the answer, and
22        he's given it to you, excuse my language,
23        three times now.
24              MR. ZHOU:  I want "yes" or "no" answer.
25        Q.    Did you consider prior teaching experience in
```

```
 1              Examination of Stephen Havlovic, Ph.D.        182
 2     your evaluation --
 3                    MR. GOGLIA:  Mr. Zhou, he gave you an
 4              answer, and you're not entitled --
 5         Q.   -- "yes" or "no"?
 6                    MR. GOGLIA:  -- to a "yes" or "no"
 7              answer.  He gave it to you, and he gave you a
 8              proper answer.  That's it.
 9                    MR. ZHOU:  If I don't understand, I can
10              ask him.  The same thing --
11                    MR. GOGLIA:  Mr. Zhou, you know what,
12              there's a language barrier.  I understand
13              we're having some difficulties because there's
14              some problems asking questions.  That being
15              said, you know quite well that you've asked
16              the question three or four times now.  You've
17              gotten identical answers three or four times
18              now, and you keep on asking the same question.
19              And frankly, you're not even asking it in
20              different terms.  You're asking the same,
21              exact question.  That's improper.  Move on.
22                    MR. ZHOU:  That's because he didn't give
23              me an answer.
24                    MR. GOGLIA:  No.  He didn't give you the
25              answer that you would like.  That's different
```

```
1              Examination of Stephen Havlovic, Ph.D.      183
2              from not giving you an answer.  He gave you an
3              answer.  Now, if you'd like to answer it
4              again, go ahead.
5       A.     I told you, I believe, three times.  No, I did
6   not consider prior teaching.
7       Q.     That's the answer?
8       A.     I don't know.
9       Q.     You said "yes" or "no"; that's the answer?
10      A.     I'm giving the answer, Dr. Zhou.
11      Q.     Now, tell me how did you get 3.8 average for
12  the undergraduate course?
13             MR. GOGLIA:  What are you referring to,
14             Mr. Zhou?
15      Q.     Just tell me how did you get this number?
16             MR. GOGLIA:  What number?
17      Q.     In this, Exhibit 6.  You had number 2.3
18  average.  Increase to average of 3.8.  How did you get
19  that 3.8 number?
20      A.     I don't recall.  I don't have all that data in
21  front of me.
22      Q.     The data in front of you, Exhibit 9, 8, 10?
23      A.     What I see here is, in terms of intermediate
24  accounting, she improved from a 1.8 to a 3.7.
25      Q.     Yeah.
```

```
1              Examination of Stephen Havlovic, Ph.D.        233
2        Q.    Now, you said this is other schools rating?
3        A.    In the second paragraph that you referenced to
4   me, it says, "I normally receive high evaluations in my
5   previous schools." I told you earlier in my deposition,
6   that when I'm evaluating instruction, that I don't
7   consider people's teaching elsewhere. I consider what
8   they did here at SUNY-IT since they were hired.
9        Q.    Yeah. What I wrote here, 4.2, is the rating
10  the first semester at SUNY-IT.
11       A.    I understand that.
12             MR. GOGLIA:  Mr. Zhou, just to be clear,
13             this is a deposition. This is not your
14             opportunity to argue your case against
15             Dr. Havlovic. So I would suggest you ask your
16             questions. We've already been here most of
17             the day. It's four o'clock now. You have
18             about an hour left, an hour and a half left at
19             max. So why don't you make use of that time
20             to ask questions and get to the gravamen of
21             the case, as opposed to this nonsense of you
22             trying to prove your case and trying to
23             convince Dr. Havlovic that his decision was
24             wrong. That's just argumentative and
25             improper.
```

```
1                Examination of Stephen Havlovic, Ph.D.         249
2        Q.    In third semester, when you get complaints,
3   what did you do?
4              MR. GOGLIA:  With respect to what?
5        Q.    To complaints you got.
6        A.    Most of --
7        Q.    What did you do after you got complaints in
8   the third semester?
9        A.    To be honest with you, it's difficult for me,
10  at this point in time, to separate out where the second
11  began and the third began and the fourth.  Other than,
12  I'm pretty sure, in the fourth, is when the written
13  petition came in.  But I do know that most of the time
14  when I got these, I asked the students to talk to the
15  department chair, and after I asked them if they'd
16  already talked to you, the instructor.  So I asked them
17  to discuss this with you, and if they said they had
18  tried, or they had and it didn't work, I asked them to
19  talk to the department chair.  And I'll say what I said
20  earlier, there was a number of times when you and I
21  spoke, where I was encouraging you to go to a teaching
22  seminar for finance, and that the School of Business
23  would pay for this, and that would not be part of your
24  faculty development allowance, that we would pay this
25  separately.  So in some cases, the students were directed
```

```
 1            Examination of Stephen Havlovic, Ph.D.         250
 2   to go to you. If they had already gone to you, they were
 3   directed to the chair. And when these things came in
 4   volume, I would have a conversation with you about trying
 5   to improve, and I kept offering to send you to a seminar.
 6        Q.   So when you received complaints, you asked the
 7   students to go me; is that correct?
 8              MR. GOGLIA:  Asked and answered. He just
 9              answered that at times, he suggested they
10              speak to you. You keep on asking the same
11              stuff over and over again. You've got to move
12              forward, Mr. Zhou. We're running out of time
13              here.
14        Q.   So every student that complained to you, you
15   asked them to come to speak to me; is that correct?
16              MR. GOGLIA:  Objection. That's
17              mischaracterizing his testimony. That's not
18              what the witness said.
19        A.   If a student came in and said that they
20   already had spoken with you, I wouldn't ask that
21   question, because they already told me. If a student
22   came in and said that they were struggling in the course
23   or whatever, I would ask if they had spoken with the
24   instructor about this. That's a consistent thing that I
25   do when students come in. I think it's important that
```

```
                Examination of Stephen Havlovic, Ph.D.        251
```

2  they talk to the instructor and try to resolve these
3  things, and if they can't resolve it with the instructor,
4  I have them go to the chair or coordinator, and that
5  would have been Dr. Langdon. He was over finance.
6      Q.   Did you know, in the third semester, if any
7  student talked to me regarding their complaints, they
8  come back to you or did you know any happened?
9           MR. GOGLIA:  Objection.  Vague and
10          ambiguous, compound, and I have no idea what
11          you said.
12     Q.   Did they come back to you after they talked to
13  me?
14     A.   I had a number of students that came back
15  multiple times. Whether it was in the third semester,
16  second semester, fourth semester, I don't know, but I had
17  people that were frustrated after they talked to you,
18  talked to the chair. I had people requesting to get
19  their money back. I had people requesting to take the
20  course from another instructor. I had lots of repeat
21  complaints from the same individuals.
22     Q.   But you don't know whether this was in third
23  semester or the second semester?
24          MR. GOGLIA:  Objection.
25     Q.   Is that correct?

```
 1          Examination of Stephen Havlovic, Ph.D.        287
 2    Friday and another group the next week, but there needs
 3    to be due process, and Dr. Langdon -- he didn't talk to
 4    you a lot.  He needed to find out what was going on, and
 5    a lot of times, I'll delegate this to coordinators to
 6    have -- to make sure the students talk to the professor
 7    to find out what the situation is.  In this case, the
 8.   student indicated that they had already gone to the
 9    learning center director, and I wanted to find out who
10    Dr. Langdon -- what was happening with the learning
11    center, as well.  So I don't know when we spoke about it,
12    but we would have spoken about it.
13         Q.   Let me understand you correctly.  You
14    notified, but there may be other days when you may have
15    talked to Langdon about this e-mail; is that correct?
16    Other days, in addition to other things, you may have
17    talked to Langdon about this e-mail?
18              MR. GOGLIA:  Asked and answered.  He just
19         gave that full testimony.  You can understand
20         that testimony by reading --
21         Q.   "Yes" or "no"?
22         A.   There was so many complaints, Dr. Zhou, it's
23    difficult to sort through when I talked to Dr. Langdon.
24    As the accounting and finance coordinator, we spoke
25    regularly regarding students complaining about your
```