UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

XU-SHEN "JASON" ZHOU,

              Plaintiff,

   -v.-                                                                                      6:08-cv-0444
                                                                                                   (GTS/ATB)

STATE UNIVERSITY OF NEW YORK INSTITUTE OF
TECHNOLOGY; DR. LISA BERARDINO; DR STEPHEN
HAVLOVIC; and DR. WILLIAM LANGDON,

              Defendants.
_____

APPEARANCES:                                                       OF COUNSEL:

SATTER & ANDREWS, LLP                              ROSS P. ANDREWS, ESQ.
 Counsel for Plaintiff
217 South Salina Street, 6th Floor
Syracuse, NY 13202


HON. ERIC T. SCHNEIDERMAN              DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
 Counsel for Defendants
The Capitol
Albany, NY 12224-0341


HON. GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

       Currently before the Court, in this employment discrimination action filed by Xu–Shen

Zhou ("Plaintiff") against the State University of New York Institute of Technology, Dr. Lisa

Berardino, Dr. Stephen Havlovic and Dr. William Langdon ("Defendants"), is Plaintiff's motion

in limine seeking to preclude certain evidence regarding his teaching performance during his

previous employment with Bloomsburg University.  Defendants oppose the motion.  For the following reasons, Plaintiff's motion is denied.

**I.     Relevant Background**

This action was commenced in April of 2008.  Plaintiff amended his complaint in April of 2009 and Defendants timely filed their answer to the Amended Complaint.  Generally, Plaintiff's Amended Complaint alleges that Plaintiff, a person of Chinese nationality and origin, was subject to discrimination during his employment at the State University of New York Institute of Technology ("SUNY IT").  This Court has liberally construed Plaintiff's Amended Complaint to assert claims of discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and Section 292 of the New York State Human Rights Law ("NYHRL").  *See Zhou v. State Univ. of New York Inst. of Tech.*, No. 08-CV-0444, 2011 WL 4344025, at *1 (N.D.N.Y. Sept. 14, 2011).

In the Fall of 2005, Plaintiff began his employment with SUNY IT as a faculty member teaching finance in the School of Business.  Dr. Spina, the Interim President of SUNY IT, extended the offer of employment to Plaintiff.  During Plaintiff's interviews for the position, he never disclosed that he received complaints from students about his teaching at Bloomsburg University, his former employer.

In August of 2009, Defendants served Bloomsburg University with a subpoena directing production of documents related to Plaintiff's employment.  Plaintiff moved to quash the subpoena in the District Court for the Middle District of Pennsylvania, which was later denied on January 5, 2010.  Bloomsburg University produced the documents to Defendants on February 12, 2010.  Defendants did not move for summary judgment until October of 2010, and never

moved to amend their Answer to add the after-acquired evidence doctrine as an affirmative defense.

Nonetheless, in support of their motion for summary judgment, Defendants raised the after-acquired evidence issue, arguing that, should Plaintiff prevail on his discrimination claim, any damages should be limited based on evidence of Plaintiff's poor teaching evaluations at Bloomsburg University. Defendants argued that, had they been aware of those evaluations, Plaintiff would not have been hired to begin with. (*See* Dkt. No. 70-1, at 11 [Defs.' Mem. of Law in Support of Mot. for Summ. J.].) In opposing the motion for summary judgment, Plaintiff advanced the same arguments he presents now in support of his motion in limine, including that, because the after-acquired evidence doctrine is an affirmative defense that must be pled, which Defendants failed to do, the Court should not consider it. (*See* Dkt. No. 78-5, at 26-28 [Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J.].) Because the Court granted Defendants' motion for summary judgment in its entirety, it did not address the parties' arguments regarding the after-acquired evidence doctrine. However, the Court did consider the evidence of Plaintiff's evaluations at Bloomsburg University as admissible evidence in determining that the record evidence does not support a finding of pretext on Plaintiff's discrimination claim. *See Zhou*, 2011 WL 4344025, at *4. The Court further noted, in granting Defendants' motion for summary judgment regarding Plaintiff's retaliation claim, that Plaintiff advanced the same arguments regarding pretext on that claim as he did regarding his discrimination claim, and that the Court rejects those arguments for the same reasons it rejected them regarding the discrimination claim. *See id.*, at 13.

Plaintiff appealed this Court's decision granting Defendants' motion for summary judgment regarding Plaintiff's retaliation claim, but did not appeal that portion of this Court's

3

decision granting summary judgment regarding Plaintiff's discrimination and hostile work environment claims. Consequently, the Second Circuit determined that Plaintiff abandoned those claims. *See Zhou v. State Univ. of New York Inst. of Tech.*, 499 F. App'x 105, 107 n.1 (2d Cir. 2012). Regarding Plaintiff's retaliation claim, the Second Circuit found that, viewing the evidence in a light most favorable to Plaintiff, they raise a triable issue of fact that a fact finder could resolve in Plaintiff's favor. *See Zhou*, 499 F. App'x at 109-10. The Second Circuit made no ruling regarding the inadmissibility of evidence relied on by this Court, despite Plaintiff having argued before the Circuit that the evidence regarding Plaintiff's teaching evaluations at Bloomsburg University is inadmissible.

Ultimately, the Second Circuit vacated this Court's decision regarding Plaintiff's retaliation claims against all Defendants except Dr. Peter Spina.[1] *See Zhou v. State Univ. of New York Inst. of Tech.*, 499 F. App'x 105 (2d Cir. 2012). Accordingly, Plaintiff's retaliation claims against all Defendants except Dr. Spina remain to be tried. In support of these claims, Plaintiff essentially alleges that Defendants decided not to renew his two-year employment contract in retaliation for Plaintiff's complaints of race or national origin discrimination by Dr. Langdon.

## II.     The Parties' Arguments

Plaintiff argues that evidence of his poor teaching reviews at Bloomsburg University prior to his employment at SUNY IT should be precluded for the following four reasons: (1) it is irrelevant and inadmissible to prove that Plaintiff had a propensity for poor teaching; (2) it does not fall within the "after-acquired evidence" doctrine because it does not constitute misconduct

---

[1] Dr. Peter Spina, the Interim President of defendant SUNY IT at the time Plaintiff's employment contract was not renewed, was originally named as a defendant in this action.

that occurred during Plaintiff's employment with SUNY IT; (3) the after-acquired evidence doctrine is an affirmative defense, which Defendants failed to plead in their answer; and (4) Defendants cannot establish that Plaintiff's performance at Bloomsburg University constituted misconduct of such severity that they would have terminated Plaintiff on that ground.

Defendants oppose Plaintiff's motion on the following two grounds: (1) evidence of Plaintiff's poor teaching reviews at Bloomsburg University and his false statements about those reviews during his interviews with SUNY IT are admissible to impeach Plaintiff's credibility; and (2) such evidence is admissible under the after-acquired evidence doctrine to limit damages, which was not required to be pled as an affirmative defense, especially where, as here, Defendants did not learn of the evidence until they discovered it after this litigation commenced.

## III.    Analysis

### A.    Whether the After-Acquired Evidence Doctrine Applies in This Case

The Court answers this question in the affirmative and adds the following analysis.

The after-acquired evidence doctrine stems from the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S. Ct. 879 (1995).  In *McKennon*, an ADEA case, the Supreme Court acknowledged that the ADEA and Title VII share common substantive features, including remedies, and a common purpose to eliminate discrimination in the workplace.  *See McKennon*, 513 U.S. at 358, 115 S. Ct. at 884.  The Court further noted that "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act."  *Id.*  Instead, where it is established "that the wrongdoing was of such severity that the employee would in fact have been terminated on those grounds alone if the employer had known of it at the time of discharge," a court may limit backpay to the period

from the date of unlawful termination until the date the new information was discovered. *Id*. at 362-63, 115 S. Ct. at 886-87. The Court further noted that, where an employer successfully establishes that it would have terminated the plaintiff's employment, "neither reinstatement nor front pay is an appropriate remedy." *Id.*, at 362, 115 S. Ct. at 886.

Nothing in the Court's decision suggests that wrongdoing that occurs in the course of an employee's interview process could not form the basis for an employer's argument that it would have terminated him had it discovered the wrongdoing after it hired him. Notably, the *McKennon* Court, in support of its holding, commented that

> [t]he proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case.

*Id.*, at 361, 115 S. Ct. at 886. Accordingly, the Court finds that the after-acquired evidence doctrine could theoretically apply to the facts asserted in this case.

### B. Whether the After-Acquired Evidence Doctrine Is an Affirmative Defense

The Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (*See* Dkt. No. 107 [Pl.'s Mem. of Law, at 2].) The Court would add the following analysis.

To be sure, as Defendants point out, "[c]ourts within the Second Circuit have not unanimously recognized the after-acquired evidence doctrine as an affirmative defense." *Ellis v. Cygnus Enters.*, LLC, No. 11-CV-771, 2012 WL 259913, at *4 (E.D.N.Y. Jan. 3, 2012) (comparing *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 160 (S.D.N.Y. 2005) (denying leave to amend answer to assert affirmative defense of after-acquired evidence) with *E.E.O.C. v.*

6

*Morgan Stanley & Co., Inc.*, No. 01-CV-8421, 2002 WL 31778779, at *1 (S.D.N.Y. Dec. 11, 2002) (holding that after-acquired evidence was not necessarily an affirmative defense and the defendant did not need to amend its answer to assert it)).  However, a fair majority of courts in the Second Circuit consider after-acquired evidence to be an affirmative defense.  *See, e.g., Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 212 (E.D.N.Y. 2009) (finding that summary judgment is not appropriate on affirmative defense of after-acquired evidence where plaintiff is able to raise a triable question of fact regarding whether such evidence would actually be a basis for termination); *Quinby v. WestLB AG*, No. 04-CV-7406, 2007 WL 1153994, at *16 (S.D.N.Y. Apr. 19, 2007) (same); *Christian v. R. Wood Motors, Inc.*, No. 91-CV-1348, 1995 WL 238981, at *12 (N.D.N.Y. Apr. 21, 1995) (granting defendants' motion to amend its answer to add an affirmative defense of after-acquired evidence).  Moreover, the sole case relied on by the court in *Ellis* to conclude that courts in the Second Circuit have not unanimously recognized after-acquired evidence as an affirmative defense was a summary order from a magistrate judge denying a motion to amend an answer to add after-acquired evidence as an affirmative defense as unnecessary, given the lack of a direct ruling by the Supreme Court or Second Circuit.  *See E.E.O.C. v. Morgan Stanley & Co., Inc.*, 2012 WL 31778779.  Given that most courts in this Circuit address after-acquired evidence as an affirmative defense, this Court will do so as well.

      **C.**    **Whether Defendants Waived Assertion of the After-Acquired Evidence Doctrine by Failing to Move to Amend Their Answer to Add It As an Affirmative Defense**

The Court answers this question in the negative, in part for the reasons asserted by Defendants in their letter brief.  (*See* Dkt. No. 112, at 2 [Defs.' Ltr. Br.].)

Generally, the failure to plead an affirmative defense results in a waiver of that defense.  *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F .Supp. 2d 682, 709 (S.D.N.Y. 2012)

(quoting *Travellers Int'l, A.G. v. Trans World Airlines*, 41 F.3d 1570, 1580 (2d Cir.1994)). *See also* Fed. R. Civ. P. 8(c) (requiring a defendant to "affirmatively state any avoidance or affirmative defense," in a responsive pleading). However, the general rule is not applied automatically, and as a practical matter, there are many exceptions to it. For example, where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party, waiver may not be proper. *See Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998). *Cf. In re Cross Media Mktg. Corp.*, 367 B.R. 435, 446 (S.D.N.Y. 2007) ("[U]nless Defendants can assert that the affirmative defenses now being alleged were not available at the pleading stage, Defendants' failure to plead these defenses should result in a waiver.").

Defendants argue that the after-acquired evidence defense did not become available to them until they discovered Plaintiff's Bloomsburg University evaluations in February of 2010, over two years after the commencement of this action. To be sure, Defendants could have sought to amend their answer at that time, but failed to do so. Instead, Defendants first mentioned the defense in October of 2010 in support of their motion for summary judgment. Nonetheless, any argument that Plaintiff is prejudiced by Defendants failure to amend their answer to assert after-acquired evidence carries little weight. Plaintiff, having unsuccessfully moved to quash the subpoena of the evidence from Bloomsburg University, was certainly aware that Defendants were in possession of the evidence before discovery closed. There being no prejudice to Plaintiff, Defendants have not waived the after-acquired evidence affirmative defense. Accordingly, Defendants are permitted to use Plaintiff's teaching evaluations from Bloomsburg University for the purpose of seeking a limitation of damages under their after-acquired evidence defense.

**D.     Whether the After-Acquired Evidence May Be Used to Impeach Plaintiff's Credibility**

The Court answers this question in the affirmative, generally for the reasons stated by Defendants in their letter brief. (*See* Dkt. No. 112, at 1-2 [Defs.' Ltr. Br.].) The Court would only provide the following analysis.

First, Defendants have made clear that they do not intend to offer the evidence of Plaintiff's prior performance at Bloomsburg University in order to show his propensity for deficient teaching. Accordingly, to the extent Plaintiff seeks to preclude the evidence on that basis, his motion in limine is denied as moot.

Second, Defendants do intend to use the evidence of Plaintiff's prior performance at Bloomsburg University, as well as his responses to questions about his performance at Bloomsburg University during his interviews for his position at SUNY IT, in order to impeach Plaintiff's credibility. Pursuant to Fed. R. Evid. 608(b), specific instances of a witness's conduct may be raised on cross examination if they are probative of his character for truthfulness or untruthfulness. Accordingly, Defendants are permitted to use the evidence regarding Plaintiff's statements during his interviews in order to impeach his credibility.

Third, Plaintiff argues that his statements during his interviews with SUNY IT do not constitute any misconduct or wrongdoing under the after-acquired evidence doctrine because he subjectively believed his teaching recommendations to be good at Bloomsburg University at the time he left its employ. Plaintiff can certainly offer evidence in support of that assertion, since whether his statements regarding his prior teaching evaluation amount to wrongdoing of the requisite severity is a question of fact for the jury to decide. However, Plaintiff's subjective belief that his statements were true does not bar Defendants from using the evidence of those

9

statements in order to limit damages or impeach Plaintiff's credibility.

**IV. Conclusion**

For all of these reasons, Plaintiff's motion to preclude evidence of his teaching evaluations at Bloomsburg University as well as his statements regarding those evaluations, which were made during the interview process for his employment with Defendant SUNY IT, is denied. Defendants are permitted to use the evidence for the purposes of 1) impeaching Plaintiff's credibility and 2) limiting any award of damages to Plaintiff.

Accordingly, it is

**ORDERED** that Plaintiff's motion in limine to preclude evidence of his teaching evaluations at Bloomsburg University and his statements regarding those evaluations during his interviews for employment at SUNY IT is **DENIED**; and it is further

**ORDERED** that Defendants are permitted to use evidence of Plaintiff's teaching evaluations at Bloomsburg University and his statements regarding those evaluations during his interviews for employment at SUNY IT to 1) impeach Plaintiff's credibility, and/or 2) limit any award of damages to Plaintiff.

DATED:  May 21, 2013
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge