UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

════════════════════════════════════════

XU-SHEN ZHOU, *also known as* Jason Zhou,

      Plaintiff,

   -v.-             6:08-cv-0444
                      (GTS/ATB)

STATE UNIVERSITY OF NEW YORK INSTITUTE OF
TECHNOLOGY; DR. LISA BERARDINO; DR STEPHEN
HAVLOVIC; and DR. WILLIAM LANGDON,

       Defendants.

════════════════════════════════════════

APPEARANCES:          OF COUNSEL:

SATTER & ANDREWS, LLP      ROSS P. ANDREWS, ESQ.
 Counsel for Plaintiff         SARAH E. RUHEN, ESQ.
217 South Salina Street, 6th Floor
Syracuse, NY 13202


HON. ERIC T. SCHNEIDERMAN     DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
 Counsel for Defendants
The Capitol
Albany, NY 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

    Currently before the Court, in this employment discrimination action filed by Xu–Shen

Zhou ("Plaintiff") against the State University of New York Institute of Technology ("SUNY

IT"), Dr. Lisa Berardino ("Berardino"), Dr. Stephen Havlovic ("Havlovic") and Dr. William

Langdon ("Langdon"), (collectively, "Defendants"), are Defendants' motion for judgment as a

matter of law, or, in the alternative, for a new trial or remittitur pursuant to Rules 50 and/or 59 of

the Federal Rules of Civil Procedure and Plaintiff's motion for an order of reinstatement or front pay. For the following reasons, both motions are denied.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural History

Because the parties have, in their memoranda of law, demonstrated an accurate understanding of this action's relevant procedural history, including the trial that occurred in this action between May 21, 2013 and May 23, 2013, the Court will not recite that history in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will proceed directly to a description of the parties' briefing on their post-trial motions.

### B. Parties' Briefing on Defendants' Motion

Generally, in their post-trial motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59, Defendants assert the following arguments: (1) Defendants are entitled to judgment as a matter of law with regard to liability because (a) Plaintiff did not establish that he engaged in a protected activity and (b) Plaintiff did not prove that Defendants' legitimate, non-retaliatory reason for Plaintiff's non-renewal was pretextual; (2) in the alternative, Defendants should be granted a new trial regarding liability; and (3) Defendants are entitled to judgment as a matter of law with regard to the after-acquired evidence rule and back pay because (a) the jury charge regarding the after-acquired evidence rule was erroneous, (b) Defendants offered unrebutted proof that Plaintiff's fraudulent misrepresentations were legitimate grounds for his non-renewal and (c) the after-acquired evidence rule should foreclose Plaintiff from recovering back pay after Plaintiff refused to produce his evaluations during discovery and moved to quash Defendants' subpoena to Bloomsburg University. (*See generally* Dkt. No. 137-6, at 6-24 [Defs.' Mem. of Law].) In

further support of their motion, Defendants argue that the Supreme Court's recent holding in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. —, 133 S. Ct. 2517 (2013) that "but for" causation applies in Title VII retaliation claims warrants this Court granting Defendants judgment as a matter of law or, alternatively, a new trial. (*See generally* Dkt. No. 140 [Defs.' Supp. Mem. of Law].)

Generally, in his response to Defendants' motion, Plaintiff asserts the following arguments: (1) Defendants are not entitled to judgment as a matter of law with respect to liability because (a) Plaintiff established that he engaged in protected activity and, in any event, there was no manifest injustice with regard to this point, and (b) Plaintiff offered sufficient evidence to support the jury's finding of pretext; (2) Defendants should not be granted a new trial regarding the question of liability because the verdict was not seriously erroneous and there was no miscarriage of justice; (3) Defendants are not entitled to judgment as a matter of law regarding the after-acquired evidence rule and back pay because (a) the jury charge was adequate and, in any event, did not constitute a fundamental error, (b) the jury was entitled to reject the "unrebutted proof" regarding Defendants' assertion of the after-acquired evidence doctrine, and (c) were the after-acquired evidence doctrine applicable, the limit on recovery would run from the date of discovery; and (4) the Supreme's Court's decision in *Nassar* does not require judgment as a matter of law because the Court applied, and instructed the jury, consistent with the pretext approach, which is used to establish "but for" cases. (*See generally* Dkt. No. 148, at 3-28 [Pl's Mem. of Law].)

Generally, in their reply to Plaintiff's response, Defendants argue that (1) this Court's initial instruction to the jury that, in order to prove a prima facie case of retaliation, Plaintiff only had to show that retaliation was a substantial or motivating factor in the decision not to renew his

employment contract, was erroneous in light of *Nassar*; and (2) Plaintiff has not and cannot establish that Defendants' alleged desire to retaliate against him was the "but for" cause of their determination not to renew his employment contract. (*See generally* Dkt. No. 150, at 2-5 [Defs.' Reply Mem. of Law].)

### C. Parties' Briefing on Plaintiff's Motion

Generally, in his post-trial motion for an order of reinstatement, Plaintiff asserts the following arguments: (1) reinstatement is the favored remedy in Title VII cases; (2) if the Court decides against reinstatement, Plaintiff should receive an award of at least one year of front pay; (3) the failure to specifically request reinstatement in a pleading does not foreclose such an award; and (4) the jury has already rejected Defendants' affirmative defense of after-acquired evidence. (*See generally* Dkt. No. 138, at 3-7 [Pl.'s Mem. of Law].)

Generally, in their response to Plaintiff's motion, Defendants assert the following arguments: (1) Plaintiff should not be entitled to an order of reinstatement because he failed to seek that relief in his amended complaint; (2) the after-acquired evidence rule should preclude Plaintiff from receiving reinstatement or front pay; and (3) reinstatement is not feasible because the relationship between SUNY IT and the Plaintiff is irreparably damaged. (*See generally* Dkt. No. 143, at 1-7 [Defs.' Mem. of Law].)

Generally, in his reply to Defendants' response, Plaintiff argues that (1) his failure to include the request for reinstatement in his amended complaint does not render that relief inappropriate; (2) the after-acquired evidence rule should not be applied because the jury has already rejected that defense; and (3) the parties' relationship has not been irreparably damaged. (*See generally* Dkt. No. 151, at 1-8 [Pl.'s Reply Mem. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Judgment Notwithstanding the Verdict Pursuant to Fed. R. Civ. P. 50(b)

Rule 50(b) of the Federal Rules of Civil Procedure provides as follows, in pertinent part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b) (emphasis added).

As a result, a prerequisite for a motion for a post-trial motion for a judgment as a matter of law (also known as a motion for judgment notwithstanding the verdict) is a pre-verdict motion for judgment as a matter of law.  *See* Fed. R. Civ. P. 50 Advisory Committee Note (1963) ("A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a judgment as a matter of law made at the close of all the evidence.") (emphasis added); Fed. R. Civ. P. 50 Advisory Committee Note (1991) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, n.5, 128 S. Ct. 2605 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

To be sure, such a motion may be granted by a district court where doing so is necessary to prevent "manifest injustice."  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998) ("As to any issue on which proper Rule 50 motions were not made, [a judgment as a matter of

law] may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice."); *accord*, *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012); *Cordius Trust v. Kummerfeld*, 331 F. App'x 810, 811 (2d Cir. 2009). However, "manifest justice" exists only when a jury's verdict is "wholly without legal support." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999) ("We may overlook such a default in order to 'prevent a manifest injustice' in cases where a jury's verdict is wholly without legal support.") (internal quotation marks omitted); *accord*, *U.S. S.E.C. v. Stamoulis*, 350 F. App'x 499, 500 (2d Cir. 2009); *Clergeau v. Local 1181, Amalgamated Transit Union, AFL-CIO*, 162 F. App'x 32, 34 (2d Cir. 2005); *Rothstein v. Carriere*, 373 F.3d 275, 291 (2nd Cir. 2004).

Finally, as for the legal standard governing a post-trial motion for a judgment as a matter of law that *has* been preceded by a trial motion for judgment as a matter of law, a district court may enter a judgment as a matter of law against a party on an issue where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir.2004) (quoting *Nadel v. Isaksson*, 321 F.3d 266, 271-72 (2d Cir. 200)). More specifically, a court may set aside the verdict pursuant to Fed. R. Civ. P. 50(b) only if there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the moving party].'" *Cross v New York Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992).) In short, a Fed. R. Civ. P. 50(b) motion must be denied "'unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence,

there must be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Cross*, 417 F.3d at 248.

**B.** **Legal Standard Governing Motions for a New Trial Pursuant to Fed. R. Civ. P. 59(a)**

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court ...." Fed. R. Civ. P. 59(a)(1)(A). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks omitted); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997). Examples of such a serious error or a miscarriage of justice include when "the verdict is against the weight of the evidence," or when "for the reasons stated the trial was not fair to the moving party." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983). However, "the court should only grant a motion for a new trial when the jury's verdict is 'egregious.'" *DLC Mgmt. Corp.*, 163 F.3d at 134 (internal quotation marks omitted); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992), *cert. denied*, 510 U.S. 908, 114 S. Ct. 290 (1993).

Moreover, to the extent any such motion for a new trial is based on an objection to a jury instruction or verdict form, Fed. R. Civ. P. 51 requires the movant to have raised that objection before the jury retires in order to preserve the objection. *See Brenner v. World Boxing Council*, 675 F.2d 445, 456 (2d Cir. 1982) ("Brenner asserts that he is entitled to a new trial on the group boycott claim because the trial court erred in instructing the jury that the burden was on him to

prove by a fair preponderance of the evidence that the WBC had not satisfied all of the elements of the Denver Rockets test.  Under Fed. R. Civ. P. 51, in order to raise a challenge to the jury instructions on appeal, a party must object to those instructions before the jury retires to consider its verdict.  Since Brenner failed to object to the instructions below, absent plain error, he is precluded from raising this claim on appeal."), *cert. denied*, 459 U.S. 835, 103 S. Ct. 79 (1982).[1]

Rule 51 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1).  Rule 51 further provides, in pertinent part, that "[a]n objection is timely if ... a party objects at the opportunity provided under Rule 51(b)(2); or ... a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused."

---

[1]    *See also Snyder v. New York State Educ. Dept.*, 486 F. App'x 176, 177 (2d Cir. 2012) ("Upon review, we conclude that the district court did not abuse its discretion in denying the Appellants' motion [for a new trial pursuant to Fed. R. Civ. P. 59(a)] because, as discussed below, their claims challenging the district court's ... jury instructions ... are without merit.... Under Fed. R. Civ. P. 51(d)(1), a party may assign error based on an erroneous jury instruction 'if that party properly objected.'") (internal citation and quotation marks omitted); *Yore v. M/V LNG LEO*, 210 F.3d 356, at *1 (2d Cir. 2000) ("[In his motion for a new trial] Yore failed to preserve his challenges to the jury instructions on the Jones Act and unseaworthiness issues he raises on appeal [pursuant to Fed. R. Civ. P. 51]."); *De Campoamor v. Horodecki*, 122 F.3d 1055, at *2 (2d Cir. 1997) ("Because De Campoamor failed to object to the court's instruction at trial and fails to allege facts that support a finding that the jury instruction constituted 'plain error' [in his motion for a new trial], his claim must fail."); *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 79 (2d Cir. 1995) ("The jurors were not given an explicit instruction that Hall's testimony was relevant only for purposes of interpreting the contract and could not be used to substitute general custom and practice for the contract. Scor asserts that the lack of any such instruction calls for a new trial.... We disagree.... Scor was obliged by Fed. R. Civ. P. 51 to raise any objection to jury instructions .... Rule 51 requires that any claim of error regarding jury instruction [forming the ground for a new trial pursuant to Rule 59] must be preserved by 'stating distinctly the matter objected to.'").

Fed. R. Civ. P. 51(c)(2). Finally, Fed. R. Civ. P. 51 provides, in pertinent part, that "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).

As a result, "[t]o establish plain error, [a movant] must show there was (1) error (2) that is plain and (3) that affects substantial rights." *U.S. v. Cossey*, 632 F.3d 82, 86-87 (2d Cir. 2011). Moreover, the Second Circuit "engages in a fourth consideration: whether or not to exercise its discretion to correct the error." *U.S. v. Doe*, 297 F.3d 76, 82 (2d Cir. 2002). Pursuant to this fourth consideration, the error should be corrected only if it "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Doe*, 297 F.3d at 82; *Cossey*, 632 F.3d at 87. This fourth consideration has appropriately been characterized as a "more stringent" requirement for review of a forfeited error. *Cash v. Cnty. of Erie*, 654 F.3d 324, 341, n.8 (2d Cir. 2011).

The Court pauses to note that the Second Circuit has, on at least one occasion, identified an apparent inconsistency in its decisions as to whether, following the amendment of Fed. R. Civ. P. 51 in December of 2003, the appropriate standard of review of an unpreserved error is a clear-error standard or a fundamental-error standard (i.e., one requiring that the error is serious and flagrant that it goes to the very integrity of the trial). *See Snyder v. New York State Educ. Dept.*, 486 F. App'x 176, 178, n.2 (2d Cir. 2012) (acknowledging apparent inconsistency).[2] After carefully considering the matter, the Court respectfully finds that the fundamental-error standard has indeed survived the amendment of Fed. R. Civ. P. 51 for the following three

---

[2]      *See Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001) ("An error is fundamental under this standard only if it is 'so serious and flagrant that it goes to the very integrity of the trial.'") (internal quotation marks omitted).

reasons: (1) the revised Fed. R. Civ. P. 51(d)(2) says only that a court "may" consider such a plain error, not that it "must" consider such a plain error, leaving open the possibility that a circuit court may, in its discretion, establish an additional, fundamental-error requirement for consideration of such an error; (2) since December of 2003, it appears that the Second Circuit has expressly used, in reviewing unpreserved errors, a fundamental-error standard twice as many times as it has expressly used only a clear-error standard;[3] and (3) indeed, in the very same decision in which it identifies the apparent inconsistency, the Second Circuit cites the point of law that the Second Circuit may require that the unpreserved error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings (which is a standard that is functionally similar to the fundamental-error standard), *see Snyder*, 486 F. App'x at 178, n.2.

### C. Legal Standard Governing Plaintiff's Claims of Retaliation

In this case, Plaintiff asserts claims of retaliation against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the New York State Human Rights Law, N.Y. Exec. law § 296 et seq. ("NYSHRL").

---

[3]     *Compare Stillman v. InService Am., Inc.*, 455 F. App'x 48, 50-51 (2d Cir. 2012) (applying fundamental-error standard to unpreserved jury instruction arguments) *and Cash v. Cnty. of Erie*, 654 F.3d 324, 34, n.8 (2d Cir. 2011) (same) and *Goetz v. Hershman*, 423 F. App'x 3, 4 (2d Cir. 2011) (same) *and Farrar v. Town of Stratford*, 391 F. App'x 47, 48 (2d Cir. 2010) (same) *and S.E.C. v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009) (same) (internal quotation marks omitted) *and Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007) (same) *and Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 152 (2d Cir. 2006) (same), *vacated on other grounds*, 554 U.S. 84, 128 S. Ct. 2395 (2008), *and Kerman v. City of New York*, 374 F.3d 93, 128 (2d Cir. 2004) (same) *and Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 155 (2d Cir. 2004) (same) *and SCS Commc'ns, Inc. v. Herrick*, 360 F.3d 329, 343 (2d Cir. 2004) (same) *with Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 152-53 (2d Cir. 2010) (using plain-error standard for unpreserved jury instruction argument) *and Tirreno v. Mott*, 375 F. App'x 140, 141 (2d Cir. 2010) (same) *and Edwards v. Tarascio*, 369 F. App'x 182, 184 (2d Cir. 2010) (same) *and Diaz v. MTA New York City Transit Authority*, —— F. App'x ——, ——, No. 06-4862, 2007 WL 4103682, at *1 (2d Cir. Nov. 19, 2007) (same) *and Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 785 (2d Cir. 2005) (same).

"To make out a prima facie case of retaliation under Title VII, Section 1981 and NYSHRL, a plaintiff must show [the following]: (1) participation in a protected activity known to Defendants; (2) an adverse employment action; and (3) a causal connection between the two." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 341 (S.D.N.Y. 2009) (collecting cases).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (noting that a protected activity need not "rise to the level of a formal complaint in order to receive statutory protection"). Protected activities encompass "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv*., 899 F.2d 203, 209 (2d Cir. 1990). A plaintiff "need not establish that the conduct [he] opposed was in fact a violation of [the law]," *Bush v. Fordham Univ*., 452 F. Supp. 2d 394, 416 (S.D.N.Y. 2006), but he must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law," *id.* (quoting *Sumner*, 899 F.2d at 209). The reasonableness of a plaintiff's belief is to be assessed in light of the totality of the circumstances. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996).

Adverse employment action is any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). "[T]ermination is an adverse employment action." *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 169 (2d Cir. 2006). Similarly, being laid off constitutes adverse employment action. *See Galabya* v. New York City

Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); *Walker v. City of New York*, 98-CV-2695, 2002 WL 31051534, at *4 (E.D.N.Y. July 22, 2002) ("Plaintiff's temporary lay-off during the summer of 1997 [was] sufficient to meet Plaintiff's burden of putting forth evidence to show that the terms of her employment were altered.").[4]

A plaintiff may establish a causal connection between the protected activity and the adverse employment action "either (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant[,] or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Schanfield*, 663 F. Supp. 2d at 343 (citing *Knight v. City of New York*, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)).

"Direct evidence giving rise to an inference of discrimination may include 'a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably.'" *Id*. (quoting *Hunter v. St. Francis Hosp*., 281 F. Supp.2d 534, 542 (E.D.N.Y. 2003)).

In order for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001) (citing cases finding temporal proximity of three months and more to be insufficient).

---

[4]     *Cf. Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009) ("An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA.").

Claims of retaliation under Title VII, § 1981 and NYSHRL are governed by the burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). *See Guzman v. News Corp.*, No. 09-CV-9323, 2013 WL 5807058, at *19 (S.D.N.Y. Oct. 28, 2013) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.2010); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459, 2013 WL 754710, at *9 (S.D.N.Y. Feb. 28, 2013)). *See also Puglisi v. Town of Hempstead*, — F. App'x —, —, 2013 WL 5663223 (2d Cir. Oct. 18, 2013) (discussing Title VII retaliation claim in context of *McDonnell-Douglas* burden-shifting framework).

"Under *McDonnell Douglas*, once the plaintiff has established a prima facie case of retaliation, the burden of production shifts to the defendant to proffer a legitimate, non-discriminatory business rationale to justify its adverse employment action." *Schanfield*, 663 F. Supp. 2d at 343.

> If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to show that, 'but for' the protected activity, she would not have been terminated. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). The Supreme Court recently clarified that 'a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer,' as distinct from 'a motivating factor,' which had previously been the standard in the Second Circuit. *Id.* at 2534; *see Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006).

*Guzman*, 2013 WL 5807058, at *19. *See also Puglisi*, 2013 WL 5663223; *Leacock v. Nassau Health Care Corp.*, No. 08-CV-2401, 2013 WL 4899723, at *11 (E.D.N.Y. Sept. 11, 2013); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, — F. Supp. 2d. —, —, 2013 WL 5338516, at *18 (S.D.N.Y. 2013).

**D.      Legal Standard Governing the Remedy of Front Pay or Reinstatement**

Title VII permits courts broad discretion to choose among a spectrum of remedies, including an order of affirmative action such as reinstatement, against an employer who has been found to have intentionally engaged in an unlawful employment practice. *See* 42 U.S.C. § 2000e-5(g). Alternatively, the court may, in its discretion, award front pay where reinstatement is inappropriate and the plaintiff has been unable to find another job. *See Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 286 (2d Cir. 2011).

Reinstatement may be deemed inappropriate where there is animosity between an employer and an employee or where there is no longer a position available at the time of judgment. *See Bergerson*, 652 F.3d at 288 (citing *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984) (describing reinstatement and front pay under the Age Discrimination in Employment Act)). Regarding plaintiff's ability to find another job, he has the duty to exercise reasonable diligence in mitigating damages by seeking alternative employment. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1182 (2d Cir. 1996) (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir.1992), *cert. denied*, 510 U.S. 908, 114 S. Ct. 290 (1993)).

The purpose of front pay is to make the plaintiff whole in cases where he has no reasonable prospect of obtaining comparable alternative employment. *See id.*, 652 F.3d at 286 (citing *Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 125-26 (2d Cir.1996)). However, where a district court makes a nonerroneous "specific finding" that an award of back pay was sufficient to make the plaintiff whole, no abuse of discretion can be found in denying front pay. *Id.*, at 287-88 (quoting *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189 (1994)).

## III.   DISCUSSION

### A.   Whether Defendants Are Entitled to Judgment As a Matter of Law or a New Trial Regarding Liability

After carefully considering the matter, the Court answers this question in the negative, primarily for the reasons raised by Plaintiff in his opposition memorandum of law.  (*See* Dkt. No. 148, at 3-12, 17-28 [Pl.'s Opp'n Mem. of Law].)  The Court would add the following points.

As an initial matter, the Court notes that Defendants moved for judgment as a matter of law at trial under Rule 50(a) on the grounds that (1) Plaintiff failed to establish that any of the decision makers involved in the process by which his employment contract was not renewed had any knowledge of Plaintiff's alleged complaint of discrimination; (2) there is no causation between the alleged complaints of discrimination and the non-renewal; and (3) Defendants have established a non-retaliatory reason for the non-renewal but Plaintiff has failed to establish that the proffered reason is a pretext for retaliation.  Accordingly, to the extent Defendants now seek judgment as a matter of law under Rule 50(b) regarding Plaintiff's failure to establish his reasonable, good faith belief of discrimination, the Court is mindful that such a motion may be granted only where necessary to prevent manifest injustice.  In any event, for the following reasons, Defendants fail to establish even the lesser standard for post trial motions for judgment as a matter of law that have been preceded by a trial motion for judgment as a matter of law, which is that there is no legally sufficient evidentiary basis for a jury to find in Defendants' favor.

In support of their Rule 50(b) motion, Defendants first argue that Plaintiff failed to prove by a preponderance of the evidence that he engaged in protected activity because he failed to prove that he (1) complained to Defendants about (2) what he reasonably believed to be discrimination.  However, Plaintiff testified that, after his car ride with Defendant Langdon,

Plaintiff spoke to three of his colleagues, who told Plaintiff that Langdon did the same thing to two other Asian faculty members.  (*See* Dkt. No. 134, at T. 199:4-9.)  Plaintiff also testified that during the car ride, Langdon talked about an American professor who had the same students as Plaintiff, but noted that Plaintiff cannot say the same things to his students as the American professor could because Plaintiff is Chinese.  (*See id*., at T. 195:21-25.)  Plaintiff went on to testify that he later spoke to Tony Panebianco in Human Resources at SUNY IT about what Langdon said during the car ride and that Plaintiff notified Mr. Panebianco that he felt he was being coerced by Langdon and that Plaintiff felt that there was a pattern of behavior because Langdon did the same thing to two other Asian faculty members.  (*See id.*, at 200:19-201:3.)  Finally, Plaintiff testified that he also spoke with Defendant Havlovic and told him the same things Plaintiff told Mr. Panebianco about what Langdon said during the car ride and Plaintiff's belief that Langdon had done the same thing to two other Asian faculty members.  (*See id.*, at 202:1-18.)

While Mr. Panebianco and Defendant Havlovic each testified that Plaintiff never so much as implied that he felt Langdon was discriminating against Plaintiff because he is Asian, a reasonable jury could have, and was entitled to, weigh the credibility of these witnesses and determine that Plaintiff did communicate his belief to Panebianco and/or Havlovic that Langdon was discriminating against Plaintiff because he is Asian.  Moreover, a reasonable jury could also have determined, based upon Plaintiff's testimony, that Plaintiff had a reasonable, good faith belief that he was being discriminated against because he is Asian.  Whether or not Plaintiff had a good faith basis for his belief is, to a large degree, a credibility determination.  Here, the jury found that Plaintiff did have a good faith basis for his belief that Langdon was discriminating against him, and the Court, of course, must defer to the jury's credibility determinations.  *See*

*Marchisotto v. City of New York*, No. 05-CV-2699, 2007 WL 1098678, at *5 (S.D.N.Y. Apr. 11, 2007). This is not a situation, as Defendants would have the Court believe, where a jury could only have reached its verdict based on surmise and conjecture. Here, there is evidence supporting the conclusion that (1) Plaintiff reasonably and in good faith believed that Langdon was discriminating against him because he is Asian[5] and (2) Plaintiff communicated that belief to Mr. Panebianco and/or Defendant Havlovic.

Defendants next argue that Plaintiff failed to prove by a preponderance of the evidence that their legitimate, non-discriminatory reason for failing to renew Plaintiff's employment contract – his poor teaching performance – was a pretext for retaliation. However, Plaintiff offered evidence that a reasonable jury could rely on to determine that the Defendants' proffered legitimate reason for not renewing Plaintiff's contract was unworthy of credence. For example, Defendant Berardino testified that another non-Asian professor with lower teacher evaluation scores than Plaintiff was treated more favorably than Plaintiff in the contract renewal process. (*See* Dkt. No. 135, at T. 330:19-334:16; 349:5-12; 353:13-357:11.) Also, while Defendants Langdon and Havlovic both testified that there were a "blizzard" of verbal complaints from students against Plaintiff, Plaintiff testified that he was never made aware of those complaints.

---

[5] Defendants argue that during Plaintiff's deposition testimony, he admitted that, at the time of his deposition, he did not believe Langdon was discriminating against him when he said that Plaintiff could not say the same things that an American professor could say because he is Chinese. However, when questioned at trial about this purported admission, Plaintiff disputed the assertion that he did not believe Langdon was discriminating against him. (*See* Dkt. No. 135, at 296:21-297:3.) Further, on redirect examination, Plaintiff explained that, based on the student complaints he had seen as of the time of his deposition, he merely made the connection regarding the basis of Langdon's statement about student complaints of humiliation. (*See* Dkt. No. 135, at 309:14-310:6.) In any event, Plaintiff's belief as of the time of his deposition is not relevant. The relevant question here, where Plaintiff asserts a claim for retaliation, is whether Plaintiff possessed a reasonable, good faith belief that Langdon was discriminating against him at the time that Plaintiff complained to Mr. Panebianco and Defendant Havlovic, not whether he learned facts at a later point in the litigation that would tend to show a lack of discrimination.

Moreover, it is undisputed that none of those complaints were reduced to writing, nor was there any written record of their existence. (*See* Dkt. No. 431, at 17-20; 452:21-454:15; 456:3-22; Dkt. No. 136, at T. 520:23-524:11.)  Accordingly, the jury was entitled to infer from this evidence that Defendants' proffered legitimate, non-retaliatory reason was false or unworthy of credence.

Finally, the Court considers the impact of the Supreme Court's recent holding in *Nassar* on the outcome of the pending motions.  Defendants argue that they are entitled to judgment as a matter or law or a new trial because the Court's instruction to the jury was erroneous in light of the standard set forth in *Nassar* and because, based on the evidence adduced at trial, no reasonable juror could conclude that retaliation was the "but for" cause of the Defendants' decision not to renew Plaintiff's employment contract.

Specifically, Defendants identify the Court's instruction regarding the fourth element of a prima facie case of retaliation under Title VII, which is that "plaintiff's complaint of race or national origin discrimination played a substantial or motivating factor in the decision not to renew his employment contract."  (*See* Dkt. No. 136, at T. 584:16-19.  *See also id.*, at T. 585:12-16.)  Defendants further argue that, given the abundance of evidence presented at trial of Plaintiff's poor teaching performance, Plaintiff "has not, and cannot, prove that he would not have been renewed by SUNY IT in the absence of the allegedly wrongful action of Defendants." (*See* Dkt. No. 140, at 3 [Defs.' Supp. Mem. of Law].)

First, as indicated above in Part II.C. of this Decision and Order, courts applying the new standard set forth in *Nassar* instruct that it is at the pretext stage that the plaintiff has the burden to establish that the unlawful retaliation would ultimately not have occurred in the absence of the alleged wrongful action or actions of the employer.  *See Puglisi*, 2013 WL 5663223; *Guzman*, 2013 WL 5807058, at *19.  Here, regarding pretext, the Court instructed the jury as follows:

> Plaintiff may prove, by a preponderance of the evidence, that SUNY
> IT's stated reason for not renewing his employment contract is false
> or is a pretext for retaliation by persuading you that SUNY IT's
> offered reason is not believable or that it was not the true reason why
> they decided not to renew plaintiff's employment contract. If you
> find that SUNY IT's offered reason was false or pretextual, the law
> allows you to infer that SUNY IT had a retaliatory motive and you
> may find for the plaintiff for this reason alone, although you are not
> required to do so.

(*See* Dkt. No. 136, at T. 588:5-14.) This instruction explains that, where the jury finds that the

Defendants' proffered reason for deciding not to renew Plaintiff's contract – his poor teaching

performance – is false or not credible, they may conclude that it is a pretext for retaliation. In

other words, the jury may conclude that Plaintiff's contract would have been renewed had it not

been for Defendants' retaliation against Plaintiff for his complaints of discrimination. For the

reasons previously explained, the Court rejects Defendants' argument that Plaintiff failed to

prove pretext by a preponderance of the evidence. For those same reasons, based upon the

evidence adduced at trial, a reasonable jury could have reached the conclusion that Defendants

would not have decided not to renew Plaintiff's contract but for their retaliation against Plaintiff

for his complaints to Defendant Havlovic and/or Mr. Panebianco. Accordingly, Defendants'

motion for judgment as a matter of law or a new trial based on the Supreme Court's recent

holding in *Nassar* is denied.

### B. Whether Defendants are Entitled to Judgment as a Matter of Law or Remittitur of the Award of Back Pay

After carefully considering the matter, the Court answers this question in the negative,

primarily for the reasons raised by Plaintiff in his opposition memorandum of law. (*See* Dkt. No.

148, at 12-17 [Pl.'s Opp'n Mem. of Law].) The Court would add the following points.

Defendants argue that they are entitled to judgment as a matter of law or remittitur of the

back pay award because (1) the charge regarding after-acquired evidence was erroneous; (2)

Defendants offered unrebutted proof that Plaintiff's fraudulent misrepresentations were legitimate grounds for the non-renewal of his employment contract; and (3) the after-acquired evidence rule should foreclose Plaintiff from recovering back pay after Plaintiff refused to produce his evaluations during discovery and moved to quash Defendants' subpoena of those evaluations.

First, Defendants identify the following portion of the jury charge as erroneous:

> Defendants have proffered evidence of plaintiff's poor teaching evaluations during his prior employment, plaintiff's misrepresentations of those evaluations during his interviews for the position with SUNY IT and plaintiff's misrepresentation of those evaluations during his contract renewal application process. Defendants argue that had SUNY IT known the plaintiff's poor teaching evaluation during his prior employment, it would have terminated plaintiff's employment based on those evaluations. If you find that defendant has proved by a preponderance of the evidence that it would not have hired plaintiff for this reason, then you must reduce plaintiff's damages award accordingly.

(*See* Dkt. No. 136, at T. 597:24-598:11.)  Specifically, Defendants argue that the Court's instruction misstates their argument and implies that SUNY IT would only have terminated Plaintiff for the fact of his teaching performance at Bloomsburg University, not Plaintiff's active concealment or intentional misrepresentation of that performance.

During the charge conference, Defendants' counsel pointed out to the Court that their argument is that there are "two acts of falsity" and that the Court should add language to the charge specifying that, if the jury finds that Defendants would not have hired or would have terminated Plaintiff because of his misrepresentations during the hiring process and/or during the renewal process, that it may reduce Plaintiff's damages award accordingly.  (*See* Dkt. No. 136, at T. 508:6-23.)  Before summations, counsel were given final copies of the charge, at which time the Court called their attention to the fact that some changes had been made.  (*See id.*, at T.

545:13-18.) After the Court read the charge to the jury, counsel were asked if there were any exceptions to the charge as read, to which both counsel replied that there were none. (*See id.*, at T.604:19-24.) After the verdict, the Court excused the jury from the courtroom, with instructions that they would be discharged shortly. At that point, counsel had a second opportunity to object to the charge but failed to do so. Counsel having failed to preserve the error Under Rule 51, the Court may only grant a new trial if the error is plain and affects substantial rights. Here, the Court's instruction in this regard, taken as a whole, is not sufficiently misleading or ambiguous to constitute plain error. *See Shah v. Pan American World Services, Inc.*, 148 F.3d 84, 96 (2d Cir. 1998). Nor does the instruction as it was read seriously affect the fairness, integrity or public reputation of the judicial proceeding. *See Doe*, 297 F.3d at 82; *Cossey*, 632 F.3d at 87. The Court clearly explained to the jury that if they find in favor of the Plaintiff on one or more of his claims, they must consider Defendants' argument that SUNY IT's discovery of evidence of alternative lawful grounds for Plaintiff's termination should limit the damages awarded to Plaintiff. The Court went on to instruct the jury that Defendants offered evidence of the alleged misrepresentations by Plaintiff regarding his teaching evaluations at Bloomsburg University. Taken as a whole, these instructions convey that, should the jury find that Plaintiff's misrepresentations were lawful grounds for his termination, they could reduce Plaintiff's damages, accordingly. For these reasons, Defendants are not entitled to judgment as a matter of law or remittitur of the back pay award on the basis that the after-acquired evidence charge was erroneous.

Second, the Defendants' proffered evidence regarding Plaintiff's alleged fraudulent misrepresentations was not, as they argue, unrebutted. Curiously, in support of their argument, Defendants identify Plaintiff's testimony that, during the hiring process, Defendant Havlovic

never asked him for his student evaluations. Self-serving as it may be, Plaintiff's testimony is still evidence that the jury is entitled to believe or not believe. Moreover, Defendants mischaracterize Plaintiff's testimony regarding his student evaluations at Bloomsburg University. Plaintiff testified that his statement that he "normally" received high evaluations in his previous schools was based on his evaluations during his last year of teaching at Bloomsburg University as well as his evaluations at the University of Cincinnati. (*See* Dkt. No. 135, at T. 260:11-15; 262:4-15; 301:19-25; 304:14-306:13.) The jury was entitled to accord greater weight to Plaintiff's testimony than to Defendants' proffered evidence regarding Plaintiff's prior student evaluations. Accordingly, the evidence proffered by Defendants of Plaintiff's alleged fraudulent misrepresentations regarding his prior evaluations is not unrebutted, and therefore, the jury was entitled to weigh that evidence as they saw fit.

Finally, Defendants cite no authority to support their argument that the after-acquired evidence rule should foreclose Plaintiff from recovering back pay after he refused to disclose his prior evaluations during discovery and moved to quash Defendants' subpoena of those evaluations. Instead, the law is clear that, where it is established "that the wrongdoing was of such severity that the employee would in fact have been terminated on those grounds alone if the employer had known of it at the time of discharge," a court may limit backpay to the period from the date of unlawful termination until the date the new information was discovered. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362-63, 115 S. Ct. 879, 886-87 (1995). Here, the Court properly instructed the jury that,

> If you find in favor of plaintiff on one or more of his claims, then you must consider defendants' argument that their discovery of evidence of alternative lawful grounds for plaintiff's termination should limit their damages, damages to plaintiff as to lost wages to the period beginning at the date of his termination through February 12th, 2010, which is the date defendants discovered the alternative lawful grounds for plaintiff's termination.

(Dkt. No. 136, at 597:16-23.)

Accordingly, for these reasons, Defendants are not entitled to judgment as a matter of law or remittitur of the jury's award to Plaintiff of back pay.

## C. Whether Plaintiff's Request for an Order of Reinstatement or Front Pay Should Be Granted

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons raised by Defendants in their opposition memorandum of law. (*See* Dkt. No. 143, at 4-7 [Defs.'s Opp'n Mem. of Law].) The Court would add the following points.

As explained above in Part II.D. of this Decision and Order, the Court may exercise its "broad discretion" to deny reinstatement where, as here, there is animosity between the parties. It is clear to the Court that this litigation, and the events leading up to it, have irreparably damaged the working relationship between Plaintiff and SUNY IT, such that an order of reinstatement would create a situation in which neither party would likely thrive. At trial, several of SUNY IT's employees testified to their belief that Plaintiff provided fraudulent information to SUNY IT, either during the hiring process or during the contract renewal application process. On Plaintiff's part there is clear antipathy toward Defendant Langdon, who is still employed by SUNY IT as a full professor in the department where Plaintiff would be working, should this Court order reinstatement. At trial, Plaintiff acknowledged his interrogatory statement wherein he compared his emotional reaction after the car ride with Langdon to "the horrible feeling a woman has after she is raped[,]" likening Plaintiff's research skills to the woman's beauty. (*See* Dkt. No. 135, at T. 281:18-282:25.) Obviously, there is a high level of distrust and animosity on the part of each of the parties here toward the other. "To order reinstatement on the facts of this case would merely be to sow the seeds of future litigation,

and would unduly burden the defendant." *EEOC v. Kallir, Phillips, Ross, Inc.*, 420 F. Supp. 919, 927 (S.D.N.Y. 1976), *aff'd*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S. Ct. 395 (1977). Accordingly, Plaintiff's motion for reinstatement is denied on this ground. The Court does not, and need not, address Defendants' remaining arguments against reinstatement.

The Court further denies Plaintiff's alternative motion for an order of front pay. The jury has awarded Plaintiff back pay in an amount that would cover his salary and benefits for approximately six years, from the date of his contract expiration through the date of the verdict. The Court finds, based on the evidence adduced at trial, that Plaintiff has a reasonable prospect of obtaining comparable employment, given his education and experience. Therefore, an award of front pay is not necessary to make Plaintiff whole. Accordingly, Plaintiff's motion for front pay is likewise denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for judgment as a matter of law or a new trial (Dkt. No. 137) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for reinstatement or front pay (Dkt. No. 138 is **DENIED**.

Dated: March 6, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge